IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JUDY UNDERWOOD, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 4:16-cv-00962-O-BP |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | § | |
| Defendant. | § | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 27), filed July 24, 2017 with Brief and Appendix in Support (ECF Nos. 28–29). United States District Judge Reed O'Connor referred this case to the undersigned for pretrial management by Order entered on February 24, 2017. ECF No. 17. After considering the pleadings of the parties, the summary judgment evidence, and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** summary judgment to Defendant on all claims as there exists no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.

## BACKGROUND

**I.    Procedural Background**

On September 13, 2016, Plaintiff Judy Underwood ("Underwood") filed her Original Petition in Cause No. 352-287474-16, styled *Judy Underwood v. Allstate Fire and Casualty Company*, in the 352nd Judicial District Court of Tarrant County, Texas. ECF No. 1-2. On October

19, 2016, Defendant Allstate Fire and Casualty Insurance Company ("Allstate") timely removed the suit to this Court. ECF No. 1.

On February 18, 2017, Underwood filed an Amended Complaint. ECF No. 16. On March 14, 2017, Allstate filed an Answer to the Amended Complaint. ECF No. 19. On July 24, 2017, Allstate filed a Motion for Summary Judgment (ECF No. 27) with Brief/Memorandum in Support (ECF No. 29) and Appendix in Support (ECF No. 28). On August 14, 2017, Underwood filed her Response to the Motion for Summary Judgment (ECF No. 33) with Brief/Memorandum in Support (ECF No. 35) and Appendix in Support (ECF No. 34). On August 28, 2017, Allstate filed a Reply. ECF No. 37.

## II.     Factual Background

Underwood purchased a homeowners insurance policy ("the Policy") from Allstate to cover her property located at 7161 Latham Drive, Richland Hills, Texas 76118 ("the Property"). ECF No. 28. The Policy was effective January 1, 2016 to January 1, 2017. *Id*. It provided coverage for up to $173,096 in dwelling protection, with an applicable deduction of $1,730, all peril. ECF No 28. at 8.

On May 10, 2016, Underwood claims she "experienced a severe weather related event which caused substantial damage to the Property and surrounding homes and businesses in the area." ECF No. 16 at 2. Underwood opened a claim with Allstate on May 16, 2016. ECF No. 16 at 3. Allstate acknowledged the claim on May 19, 2016, and assigned an adjuster to the claim. *Id.* On May 24, 2016, the adjuster inspected the Property. *Id.* The adjuster allowed for a loss of $857.95, which constituted the estimated cost of removal and replacement of ½-inch drywall in the bedroom, office, and living room. *Id*. As this loss was less than the deductible of $1,730.96, Allstate issued no payment on the claim. ECF No. 29 at 2.

Underwood then hired a public adjuster, National Claims Negotiators. ECF No. 16 at 4; ECF No. 29 at 3. On June 13, 2016, Underwood's public adjuster inspected the Property. ECF No. 16 at 4. Underwood's adjuster recommended a number of additional repairs to the exterior and interior of the Property. *Id.* Underwood's adjuster estimated a total cost of $61,572.51 for these repairs. *Id.* at 6. On June 24, 2016, a different adjuster employed by Allstate re-inspected the Property, with Underwood and her public adjuster present. ECF No. 29 at 2. This time, Allstate's adjuster found damage to the exterior and interior of the Property, and estimated $6,786.27 for the cost of the repairs. *Id*. After subtracting recoverable depreciation of $932.10 and the Policy deductible of $1,730.96, Allstate issued a payment under the Policy in the amount of $4,123.21. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

## ANALYSIS

This action concerns Underwood's claim under her Allstate homeowners policy. Underwood asserts that Allstate underpaid her after a storm damaged her Property on May 10, 2016. Underwood sues for breach of contract and three extra-contractual claims: violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, and breach of the common-law duty of good faith and fair dealing. As no dispute of material fact exists as to any of these claims, the undersigned recommends that summary judgment be granted for Allstate on all counts.

**I.    Summary judgment should be granted for Allstate on Underwood's breach of contract claim, as Underwood has provided no evidence that a covered peril caused her additional damages.**

"An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by [her] policy." *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925

S.W.2d 696 (Tex. 1996). However, an insured can recover where she suffers damage from both covered and non-covered perils. *Hamilton Properties v. Am. Ins. Co.*, 3:12-CV-5046-B, 2014 WL 3055801, at *4 (N.D. Tex. July 7, 2014), *aff'd*, 643 Fed. App'x. 437 (5th Cir. 2016) (applying Texas law). Under the doctrine of concurrent causes, the insured is entitled to recover the portion of the damage caused solely by the covered peril. *Hahn v. United Fire & Cas. Co.*, 6:15-CV-00218 RP, 2017 WL 1289024, at *8 (W.D. Tex. Apr. 6, 2017) (applying Texas law). The burden of proof is on the insured to segregate the damages attributable solely to the covered peril. *Wallis v. United Services Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied).

"When covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). "Failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) (applying Texas law); *see also Wallis*, 2 S.W.3d at 303 (holding that "an insured's failure to carry the burden of proof on allocation could not be immaterial because it is central to the claim for coverage"). Expert testimony concerning the proper allocation of damages between covered and excluded risks is not, however, necessarily required; evidence from lay witnesses can suffice. *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 (Tex. 1993) (*citing United States Fidelity and Guar. Co. v. Morgan*, 399 S.W.2d 537, 540 (Tex. 1966)) (noting that "testimony of [the plaintiff] and her neighbors that there was no preexisting damage . . . constituted some evidence of the extent of damage attributable solely to the windstorm"); *see also Hahn*, 2017 WL 1289024, at *8 (denying the defendant insurer's

summary judgment motion as the plaintiff insured submitted evidence that the subject roof had been repaired prior to the storm and had been in good condition).

Allstate raises the issue of the doctrine of concurrent causes and argues that Underwood has not provided evidence that any damage beyond the amount of the second estimate written by Allstate resulted from the storm on May 10, 2016. ECF No. 29 at 8. While the burden is not on Allstate to prove absence of such evidence, Allstate points out that Underwood's sole expert witness was unable to testify in deposition that the storm on May 10, 2016 caused the damage found in the photographic evidence he reviewed, as opposed to a storm from another date. ECF No. 28 at 76, 39:20–41:12.

In her response to this argument, Underwood argues that the disparity of approximately $55,000 between Allstate's adjuster's estimate and Underwood's adjuster's estimate is evidence of breach of contract and creates a "glaring fact issue." ECF No. 35 at 4–5. Certainly that would be the case if the issue Allstate raised on summary judgment concerned whether it had paid the proper amount for the damage to the Property. However, the argument Allstate raised concerning the doctrine of concurrent causes is not the extent of covered damage but whether a covered event caused the additional damage at all. An estimate is only a description of existing damage, which could have resulted from any number of events that occurred prior to the date of the estimate, including another storm on a date that was not covered by the insurance policy at issue. It is Underwood's burden to allocate the damage by proving some particular instances of damage that Allstate did not pay for and then proving that those instances resulted from a peril covered by the Policy. Generically noting a disparity in monetary estimates does not provide the required particularity needed for allocation or causation.

As additional evidence of causation, Underwood provides numerous photographs taken by her public adjuster showing damage to the Property. ECF No. 35 at 4; ECF No. 34 at 1–95. This evidence carries the same problems as the estimate—there is no explanation in the evidence of which photographs evince damage that resulted from a covered peril for which Allstate has not already paid. Allstate does not dispute that there was damage. Allstate argues, under the doctrine of concurrent causes, that Underwood must provide summary judgment evidence that a covered event caused the additional damage and that Allstate did not properly reimburse her for that additional damage. Underwood has introduced no evidence—from lay or expert witnesses, through circumstantial evidence, or otherwise—of damage to the Property that resulted from the May 10, 2016, storm and for which Allstate should have paid under the Policy.

The burden of producing such evidence of causation by a covered peril is on Underwood, according to *Wallis* and *Lyons*. Underwood has not produced that evidence. As the court in *National Union Fire Insurance* held, failure to allocate damages between those that resulted from covered perils and those that did not is fatal to Underwood's claim. Accordingly, summary judgment should be granted to Allstate on the breach of contract claim.

II. **Summary judgment should be granted for Allstate on Underwood's extra-contractual claims, according to the general rule that there can be no recovery on extra-contractual claims without a valid breach of contract claim.**

"The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *USAA Texas Lloyds Co. v. Menchaca*, 14-0721, 2017 WL 1311752, at *4 (Tex. Apr. 7, 2017); *see also Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). The rationale for the general rule is that the Texas Insurance Code only allows an insured to recover actual damages "caused by" the insurer's statutory violation. Tex. Ins. Code § 541.151; *USAA Texas Lloyds*, 2017

7

WL 1311752, at *6. Courts have applied this general rule to other types of extra-contractual violations, including prompt payment of claims under Texas Insurance Code § 21.55, failure to fairly investigate, and bad-faith denial of claims. *USAA Texas Lloyds*, 2017 WL 1311752, at *4. Under Texas law, violations of the DTPA and Insurance Code "require the same predicate for recovery as bad faith causes of action in Texas. Plainly put, an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (citations omitted). The central question is whether "the jury finds that the policy entitles the insured to receive the benefits and that the insurer's statutory violation caused the insured to not receive those benefits." *USAA Texas Lloyds*, 2017 WL 1311752, at 7. Only then can the insured "recover the benefits as 'actual damages . . . caused by' the statutory violation," as well as recover for extra-contractual claims. *See id.* (quoting Tex. Ins. Code § 541.151).

An insured also can recover under the independent-injury rule in certain cases where the policy does not entitle the insured to benefits. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 214 (Tex. 1988), *overruled by Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012)) ("We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim."); *but see Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013) (noting that "in seventeen years since [*Stoker*] appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim").

The Texas Supreme Court clarified the independent-injury rule in *USAA Texas Lloyds*, dividing it into two aspects. 2017 WL 1311752, at *11. The first aspect provides that:

8

> if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. . . . This aspect of the independent-injury rule applies, however, only if the damages are truly independent of the insured's right to receive policy benefits. . . . When an insured seeks to recover damages that "are predicated on," "flow from," or "stem from" policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits.

*Id.* (citations omitted). The second aspect "is that an insurer's statutory violation does not permit the insured to recover any damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* The Texas Supreme Court concluded that "[a]n insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Id.*

Underwood asserts three extra-contractual claims. ECF Nos. 16, 35. She has not established a valid breach of contract claim, as stated above in Part I. As a result, the general rule, confirmed in *USAA Texas Lloyds*, that the insured cannot recover for extra-contractual violations applies. The only exception would be if the independent-injury rule applies instead. However, Underwood's claims of damages all "'are predicated on,' 'flow from,' or 'stem from' policy benefits," which precludes recovery under the independent-injury rule, as the Texas Supreme Court held in *USAA Texas Lloyds*. As a result, all three extra-contractual claims fail.

### a. Summary judgment should be granted for Allstate on Underwood's claim for violations of the Deceptive Trade Practices Act, as it is an extra-contractual claim with no independent-injury exception.

Underwood sues for violations of the Texas Deceptive Trade Practices Act by virtue of its tie-in provision to the Texas Insurance Code. ECF No. 35 at 9. Underwood does not specify with complete particularity which provisions of the Texas Insurance Code apply to her claim. *See id.* at 9–10. The undersigned construes her claims to be arising under (1) Tex. Ins. Code § 541.060(a)(2),

9

for Allstate's failure to settle her insurance claim in a prompt, fair, and equitable manner, because of the difference between Allstate's and Underwood's estimates; and (2) Section 541.060(a)(3), for Allstate's failure to provide a prompt and reasonable explanation of its second estimate, which forced Underwood to hire her own estimate writer and attorney. *See id.* at 11. These claims flow from her suit for breach of contract, which has as its subject the alleged underpayment of her insurance claim, and as a result they do not support an independent injury.

> **b. Summary judgment should be granted for Allstate on Underwood's claim for violations of the Texas Insurance Code, as it is an extra-contractual claim with no independent-injury exception.**

Underwood sues for violations of the Texas Insurance Code, specifically Section 542.051, part of the Texas Prompt Payment of Claims Act ("TPPCA"). *Id.* at 6. She argues that Allstate did not make timely payment of her claim "once its liability became reasonably clear, which, at the very latest is June 16, 2016, the date in [sic] which Defendant received Plaintiff's estimate of the covered damage." *Id.* at 7. Underwood relies primarily on *Graber v. State Farm Lloyds*, in which the District Court denied summary judgment for the defendant insurer, holding that the insurer, who paid a greater amount on a claim after an appraisal, could still be liable under the TPPCA. 3:13-CV-2671-B, 2015 WL 3755030, at *8 (N.D. Tex. June 15, 2015), *reconsideration denied*, 3:13-CV-2671-B, 2015 WL 11120532 (N.D. Tex. Aug. 6, 2015). Many other courts have held otherwise. *E.g. Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (affirming summary judgment because there can be no liability under the TPPCA if the insurance claim is not covered by the policy); *Garcia v. Lloyds*, 514 S.W.3d 257, 275 (Tex. App.—San Antonio 2016, pet. denied) (noting that "[c]ontrary to [*Graber*] on which Garcia's [sic] relies, a long line of cases has held that full and timely payment of an appraisal award under the policy precludes an insured from recovering penalties under the Act as a matter of law"); *Stewart v.*

*Geovera Specialty Ins. Co.*, CV H-14-3162, 2015 WL 12778800, at *3 (S.D. Tex. Oct. 21, 2015) (affirming summary judgment for the defendant insurer as "[n]umerous cases have held that 'timely payment of an appraisal award under the policy precludes an award of statutory penalties under the Texas Insurance Code chapter 542.'" (quoting *Bernstien v. Safeco Ins. Co. of Ill.*, 05-13-01533 CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas June 30, 2015, no. pet.))).

The Texas Supreme Court resolved this dispute in *USAA Texas Lloyds* by including prompt payment of claims in the general rule that extra-contractual claims do not survive a failure of a breach of contract claim unless they prove an independent injury. 2017 WL 1311752, at *4–5 (citing *Boyd*, 177 S.W.3d at 922). Underwood's only claim to injury under this statute is untimely payment, which is not independent of her breach of contract claim. As a result, Underwood's claim under the Texas Insurance Code does not survive the general rule barring extra-contractual claims without a breach of contract finding.

  c. **Summary judgment should be granted for Allstate on Underwood's claim for breach of good faith and fair dealing, as it is an extra-contractual claim with no independent-injury exception.**

Underwood sues for breach of the common-law duty of good faith and fair dealing, claiming that Allstate breached this duty by underpayment of her claim. ECF No. 35 at 8. An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was no reasonable basis for denying the claim or delaying payment of the claim. *Aranda*, 748 S.W.2d at 213.

The general rule excluding extra-contractual claims applies to bad-faith claims. *USAA Texas Lloyds*, 2017 WL 1311752, at *4; *Stoker*, 903 S.W.2d at 341. As her claim for bad faith relies entirely on Allstate's underpayment of her insurance claim, that is, the alleged breach of contract, this claim flows from her breach of contract claim and thus is no independent injury that would support recovery.

Additionally, Underwood's sole proof of bad faith is that Allstate revised its estimate after reinspecting the Property. However, the revision of an estimate is not proof that there was no reasonable basis for an earlier estimate. In order to be sufficient, the evidence of bad faith needs to show that there was no reasonable basis for denial of the claim "by the facts before the insurer *at the time* the claim was denied." *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) (emphasis added). Underwood has provided no evidence of a lack of reasonable basis at the time of the first inspection, because she has not explicitly tied any evidence to the first inspection. Her failure to do so further supports Allstate's entitlement to summary judgment on Underwood's bad-faith claim.

## CONCLUSION

Underwood has not established a valid breach of contract claim, as she has not provided any summary judgment evidence that a covered peril caused her additional damages, in order to satisfy the doctrine of concurrent causes. In the absence of a valid breach of contract claim, her remaining claims fail as well because of the general rule that the insured cannot recover for extra-contractual violations without a valid breach of contract claim. The only exception would be if the independent-injury rule applies instead. However, Underwood's extra-contractual claims all are predicated on, flow from, or stem from policy benefits, and thus they are not independent injuries. As a result, Allstate is entitle to summary judgment on both her breach of contract claim and her

extra-contractual claims of violations of the DTPA, violations of the Texas Insurance Code, and breach of good faith and fair dealing.

Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion for Summary Judgment (ECF No. 27) and enter summary judgment for the Defendant on all claims.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed September 19, 2017.

                                                       Hal R. Ray, Jr.
                                                     UNITED STATES MAGISTRATE JUDGE